CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

MAY 13 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:04CR00083-001 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| BRYANT O'NEAL BANKS, | ) | |
| | ) | |
| Defendant, | ) | By:    B. WAUGH CRIGLER |
| | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Indictment charging the defendant in Count One with knowingly conspiring to distribute, and to possess with intent to distribute, 50 grams or more of a mixture or substance containing cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; in Counts Two, Three, Four, and Five, with knowingly and intentionally distributing or possessing with the intent to distribute a quantity of a mixture containing cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1); and in Count Seven, with knowingly and intentionally distributing and possessing with the intent to distribute more than 50 grams of a mixture containing cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). The Grand Jury also returned a forfeiture allegation, in Count Eleven, that requires the defendant to forfeit any property derived from any proceeds of the violations and any property used to commit such violations, including $7,600.00 seized from the defendant during this investigation. On April 22, 2005, a plea hearing was

conducted before the undersigned, and the defendant entered a plea of guilty to Counts One, Two, Three, Four, Five, and Seven of the Indictment pursuant to a plea agreement between defendant and the government.

  At this hearing the defendant was placed under oath and testified that his full legal name is Bryant O'Neal Banks, that he was born on January 19, 1975, and that he completed the tenth grade and received a GED. The defendant stated that he can read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he was subject to no physical or mental conditions that would impair his ability to understand the nature of the proceedings being held, the nature of the charges against him or the consequences of pleading guilty to those charges. Defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to these offenses.

  The defendant testified that he had received a copy of the Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. He also testified that he had read the plea agreement in its entirety and had discussed the plea agreement with his counsel before signing the agreement. He stated that he understood the terms of the agreement and that the document presented to the court set forth his agreement with the government in its entirety. The defendant specifically testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence and that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in the indictment, including any facts related to sentencing.

The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises other than those contained in his agreement with the government, or made any assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offenses with which he is charged are felonies and that, if his plea is accepted, he will be adjudged guilty of such offenses. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100 per felony count, and that, at the discretion of the court, he may also be denied federal benefits, as that term is defined in 21 U.S.C. § 862, for a period of years or indefinitely, as set forth in the plea agreement.

The defendant was informed that the maximum possible penalty provided by law for the offenses with which he is charged is, in the case of Counts One and Seven, life imprisonment and a $4 million fine, together with supervised release; and in the case of Counts Two, Three, Four, and Five, twenty years imprisonment and a $1 million fine, together with supervised release. The defendant also testified that he understood the forfeiture count of the indictment and would not contest it.

The defendant was informed under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he

understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have an opportunity to challenge the reported facts and the application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney has given him and that the court has the authority to issue a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty.

The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a) for acceptance of responsibility and a one-level (1) reduction pursuant to USSG § 3E1.1(b) if his offense level is 16 or greater. The defendant also stated that he understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion in this regard, he must provide such assistance in a manner set forth in the plea agreement. The defendant further stated that he understood that the government is free to recommend to the court what sentence he should receive, but that the court would not be bound by the government's recommendation. The defendant testified that he understood that he would be held responsible for over 500 grams of crack cocaine, but that the court would not bound by that stipulation at sentencing. In addition, the defendant's plea agreement states that the government and the defendant agree that no points should be added or subtracted for the defendant's role in the offenses. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which

could result in additional incarceration.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1.   The right to plead not guilty to any offense charged against him;
2.   The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3.   The right of assistance of counsel at that trial and in any subsequent appeal;
4.   The right to see, hear and cross-examine witnesses;
5.   The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6.   The right to decline to testify unless he voluntarily elected to do so in his own defense;
7.   The right to a unanimous guilty verdict; and
8.   The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also testified that he understood the possible consequences of his plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept his plea of guilty to Counts One, Two, Three, Four, Five, and Seven of the Indictment.

**THE GOVERNMENT'S EVIDENCE**

The government submitted in open court a factual summary of its evidence against the defendant. The defendant accepted this summary of evidence in its entirety. The evidence presented in the factual summary regarding the offenses charged is as follows:

Regarding Counts Two, Three, Four and Five, three separate confidential informants were prepared to testify in open court that on these occasions, they went to the defendant's residence and bought crack cocaine from the defendant. Police officers met the confidential informants immediately before and after the controlled buys, and searched the informants both before and after the buys, with negative results. The informants were watched as they entered and exited the defendant's residence. The substances they purchased from the defendant were subsequently sent to the Division of Forensic Science where it was confirmed that the substances they had purchased from the defendant were cocaine base.

Regarding Count Seven, two officers responded to the area of Claire Page and Virginia Avenue in reference to information that two black males were in that area selling drugs. The two officers encountered the defendant, and his brother, Otis Lee Banks, and after a brief conversation, allowed both the defendant and his brother to leave. Shortly thereafter, Detective Tim Chilton went to the location, and after a K-9 unit arrived, recovered a brown bag in the immediate area where the defendant and his brother had been standing. Inside the bag, police recovered approximately 94 grams of crack cocaine, which was sent to the Division of Forensic Science where it was confirmed to be 94 grams of cocaine base. A few months later, the defendant was arrested on unrelated warrants after a short foot pursuit, and police recover approximately 3.5 grams of crack cocaine, and a set of digital scales on the ground, in the immediate area where the defendant had fled before being caught. In a search incident to arrest, police recover $7,880 cash on the defendant's person.

Regarding Count One, Jonathan Bennett, who himself pled guilty to drug distribution charges, was prepared to testify that beginning in July, 2004, he began getting his crack cocaine from the defendant; that he would be "fronted" an ounce of crack cocaine at a time, continuing through until

November, 2004. Mr. Bennett would have testified that during this time, he saw the defendant with as many as nine ounces of crack cocaine on one occasion, and with 4.5 ounces of crack cocaine on a number of occasions. Mr. Bennett would testify that he sold anywhere between one half to three quarters of a kilogram of crack cocaine that he had obtained from the defendant. He would testify that he began selling for the defendant after the defendant's brother, Otis, was arrested in July. William Rector, another co-defendant, was prepared to testify that he also obtained ounce quantities of crack cocaine from the defendant. All of these events occurred in the Western District of Virginia.

## PROPOSED FINDINGS OF FACT

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Counts One, Two, Three, Four, Five, and Seven of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

## RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned RECOMMENDS that this court accept the defendant's plea of guilty to Counts One, Two, Three, Four, Five, and Seven of the

Indictment and adjudge him guilty of those offenses. The undersigned further DIRECTS that a presentence report be prepared and RECOMMENDS that the presiding District Judge defer acceptance of the plea agreement until after that report has been submitted to the Court. The scheduling clerk of the presiding District Judge will contact both parties to schedule a sentencing hearing.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED:

United States Magistrate Judge

May 13, 2005

Date

-8-